I thought we finished with the Telecommunications Act about 20 years ago, we had a lot of cases. Not quite yet your honor, but we're getting there. May it please the court, Henry Weissman for the appellants. IntraMTA traffic is local traffic regardless of the carrier involved in transporting it and LECs may not assess access charges on any carrier involved in transporting local calls. The core question in this case is whether the LECs provide access services when they originate or terminate IntraMTA traffic and that question is answered by the FCC's regulations which is where I would like to begin. I would invite the court's attention first to 47 CFR 51.701B2. That regulation defines non-access traffic, that is local traffic, as traffic exchanged between a LEC and a CMRS provider within an MTA. Traffic that passes through an intermediary carrier, whether IXC or otherwise, is exchanged between a LEC and a CMRS provider within the meaning of B2 and hence is... But the definitions in the statute remain unchanged by the regulation. Correct, your honor. The definition in the statute is in 251G. 251G preserves access charges for exchange access. So the question becomes, does the provision of origination and termination of IntraMTA calls constitute exchange access? And that was what this regulation determines because the FCC has unquestioned authority to define the local calling area which is what determines whether the traffic is exchange access. So the fees were no longer required after the 2011 change, is that your position? Yes, I would say actually from the date of the local competition order where the FCC promulgated the rule that traffic within an MTA is local traffic, that invoked the reciprocal compensation regime. I think what... Did your client cease paying the charges at that time? No, we did not. Because at that time, the industry was still trying to understand how does the ruling of the local competition order and the regulation that was promulgated apply when there is an intermediary carrier between the LEC and the CMRS. There's no question that when the LEC and the CMRS exchange traffic directly within the MTA, it's not subject to access. The question was, when there's an intermediary carrier, does that change anything? And then we had a series of appellate decisions which held that no, it does not. And the FCC in the 2011 Connect America order endorsed those decisions, so that is... And I would say also amended the regulations to make it even more clear. And if I may, I would like to focus the court on the language of those regulations which we think controls the case. So, again, 701B2 says traffic that is exchanged between CMRS and LEC networks is local traffic, it's non-access traffic. The 8th, 9th, and 10th circuits have all held that this regulation is applicable to traffic that passes through an IXC as an intermediary carrier. As I say, those decisions were endorsed by the FCC in the 2011 order, and in fact, the LECs do not really dispute this proposition because they admit that they cannot charge access to CMRS providers when the traffic passes through an intermediary carrier, which means they must concede that 701B2 applies to such traffic. So now the question is, given that the traffic is non-access, even when carried by an intermediary carrier, it is unlawful for the LECs to impose access charges on the IXCs who carry such traffic. That is clear from 701B2, which refers to the traffic, not the nature of the carrier, and it's also clear from 51.703. So there are two provisions of 703 that are important. 703B expressly prohibits LECs from imposing charges on, quote, any other telecommunications carrier, end quote, for originating non-access traffic. Clearly IXCs are within the sweeping language of any other telecommunications carrier. Then we also have 51.703C, which was added in 2011, which states, quote, in no event may the total charges that a LEC may assess, end quote, for non-access traffic exceed the reciprocal compensation rate. So when we're dealing with non-access traffic, as we clearly are in this case, 703 prohibits the LECs from imposing charges on IXCs for originating and prohibits the LECs from imposing total charges that exceed the reciprocal compensation rate, which is the rate that is applicable between the LECs and the CMRS providers. And I might say, while I think the language of the regulation is clear and dispositive, both the local competition order and the 2011 Connect America order reinforce this by stating that traffic is not subject to access charges. And that was the holding of all of the important cases that are discussed in the brief. And I might perhaps start with what the Eighth Circuit's decision in the Alma case. So in Alma, this was the third of a trilogy of cases in the Eighth Circuit. In that case, the court discussed and referred to its prior decisions in INS and RETA. And the Alma court said that in INS, the court had held, quote, an intermediary carrier was not required to pay access charges for cell phone to landline calls originating and terminating within a major traffic area, end quote. That's precisely the contention that is our submission in this case. No, I mean, why can't you put this down where the little goats can eat it? Why can't this be reduced to some simple 1, 2, 3, 4 in terms of your argument? Yes, sir. So can you do that? So I'm going to try, Your Honor. And I have no experience in this. None of us do. And I guess most judges don't. But you can put it down so that if this is the issue, and this is my argument, if this is true, then this is true, and this follows, and then that follows, and this is the result. Thank you, Your Honor. Why can't you do that? Let me try a simple syllogism and see if this is helpful to the court. Lex cannot impose access charges on local traffic, point one. Point two, traffic that originates and terminates in the same MTA is local traffic. That's also true when it passes through an intermediary carrier. Point three, Lex cannot impose access charges on IXCs that carry local traffic. That's what this case boils down to. It's local traffic not subject to access. It's as simple as that. Hopefully that's helpful to the court. That's my simplest way of explaining it. I can understand that. You heard it. We began to cross-reference dozens of regulations. I get terribly lost. I apologize to the court. No, no, no, no. It's not your fault. You had a lot of realms in the district court, quite obviously, on the various motions and so forth, as I read the briefs and so forth. The argument you're giving us today, the initial one and that one, is the argument in presentation that was presented in the trial court, right? Yes, sir. You have today anchored very closely to the regs, et cetera, in making your arguments. Where did the trial court go wrong, given a site of the same regs, these arguments were made in the 12Bs and the summary judgments. There was even an oral argument in the district court. Yes, sir. I'm fantasizing. You all might have had charts and gizmos and all kind of other stuff to try to help make it easier, but just help me understand where the district court got off as it relates to your argument because you cited the regs there, you cited the regs here, and the district court, I think, essentially, held that the earlier rulings did not supersede the latter and therefore, King's Act, you lose. Now, I may be over-simplifying it. Yes, sir. You get the thrust of my question? I do. All right. Help me. Our major point of disagreement with the district court is that the court assumed that when the LECs originate and terminate traffic that is passed to a long-distance carrier, that that is automatically access unless it's explicitly superseded.  The reason perhaps that the district court was led astray to that conclusion was that this issue was not adequately briefed in the district court. So the fulcrum of the LECs arguments at oral argument in the district court was 251G, which had not been briefed, and I think had that issue, had there been a further opportunity to develop that issue and to explain to the district court. So the whole construct that the district court applied we submit was the wrong one. The district court said, this is access traffic. Therefore, you need to point me to a regulation that explicitly supersedes access traffic. I find these regulations ambiguous. Therefore, the LECs win. When you say not well briefed below, you mean not well briefed below by you or your side? I would say so it was the LECs that filed a motion to dismiss. I understand that, but I ask you where the trial court got astray and you said the district court assumed vada vada and you said in part that was because the issue was not well briefed and fleshed out. So since you've lost, I'm assuming you mean it wasn't well briefed, not you personally, but fleshed out. My question is, given all that transpired, oral argument and all that, why was that not so? Because we had one brief, the other side didn't raise 251G in their brief. So the issue of 251G was raised really for the first time in the oral argument at the motion to dismiss and I would submit that had the issue, had there been a further opportunity to work through this issue as we're attempting to do today with this court, the district court might not have been led We should reverse and send it back because the district court was lacking the clarification there that you're providing to us here yet all the same people were there, there were all these hearings, there was oral argument, there was lots of months in between the time of the hearings and the rulings and so on and so forth. I mean, I know you're asking us to reverse as a matter of law, but I'm trying to get my head around. If your argument here is the same as it was below, what's the basis of our reversal? But I think I understand what your answer is, so press ahead with it. Thank you, Your Honor. Yeah, very simply, the district court believed that because it was access traffic, there had to be an explicit regulation saying that that's terminated. It found those regulations not sufficiently clear. We feel that that was an error and we invite the court to reverse that error. The reason it was an error is because before you get to the question of whether the regulation has explicitly superseded access charges, one has to ask the question, is this access traffic, is this long-distance traffic subject to access charges to begin with? And the main point is that by promulgating the intra-MTA rule, the FCC declared that this is local traffic. Local traffic, getting back to my syllogism, is not subject to access charges. So that's our key point and that is codified in the regulations to which I referred, 701B2 and 703B and C. 701B2 defines traffic, that issue in this case, as non-access traffic. 703B and C prohibits the imposition of access charges on any carrier involved in transporting that traffic. And I might say, in all of the cases, in all of the cases, the 8th, 9th, and 10th Circuit cases, the question was, could the LECs impose access charges or were they required instead to impose reciprocal compensation? All of the cases held reciprocal compensation and not access charges. That was the precise holding of all those cases. By the way, those cases involved the question, could the LECs impose access charges on IXCs? Some of the cases did. Specifically, the 8th Circuit cases in INS and RETA specifically involved the question, can the LECs impose access charges on IXCs that carry intra-MTA traffic? And both courts said no. So where does that leave the LECs in this case? What they say is those cases were limited to the circumstance where the IXC was not acting as an IXC. That's exactly our submission in this case. Just because the carrier who happens to be involved in transporting an intra-MTA call also transports long distance calls does not mean that the LECs can impose access charges when they're carrying local traffic which is what's at issue in this case. If I read 251G Yes, sir. indicates at least from my point of view and just reading it is that after 1996 it shall provide exchange access and including receipt of compensation based on the access until explicitly superseded by regulations prescribed. Then I would read the comprehensive reform order to say that it is in this order we explicitly supersede the traditional access charge regime. Now why doesn't that more or less end it? We have two arguments on 251G, Your Honor. Well, I'm just saying it seems to me that that that 251G says that access charges and this gets complicated because you've got damages involved in this but I'm talking about just a declaratory relief. Yes. Is to say that the access charges applied until explicitly superseded and then the comprehensive reform order superseded, expressly superseded the 251G was not a carve out, was no longer a carve out for the basic premise that the negotiated rate would apply, not the tariff rate. So I don't understand why that doesn't resolve in your favor, frankly. We agree, Your Honor. I want to know what the other side would say about that. I mean it just seems to me fairly clear but I understand that I could be missing a lot of arguments in between but I mean it just it seems to me then we get into the damages and whether there was ever a carve out for the charges that you're making and so on up at the charges they're making. Yes, Your Honor. If I might just make one further point along the same lines. I want you to tear down my argument. No, because you're favoring me so I would beg to not tear down your argument with which we agree. I would just say that in the... From your point of view, why isn't it that simple? Absolutely, Your Honor. It is that simple. We would respectfully maintain the position that even as of the date of the local competition order... I understand that. But certainly from the... Damages is another question. Yes, sir. Tell me what would you add to what I said to make the argument complete? One point... Forgive me, Your Honor. One point. I see my time is running down so if I may make one point very quickly. In the Connect America order in paragraph 1007 and footnote 2133 the FCC not only says what you said but they also endorsed the holdings of the 8th and 10th circuits and specifically the holdings of the 8th circuit which went exactly to this issue. The 8th circuit said the Lex could not impose access charges on intra-MTA traffic. The FCC endorsed that holding in the Connect America order. Case closed. May I reserve the balance of my time for rebuttal? Well, you can save the initial 5 minutes that you had if that's what you want. Is this showing me the 5 minutes? I'm sorry, I'm a little confused. No, you have 4 minutes left. I still have 4 minutes. Forgive me, Your Honor. I'm so sorry. You'll get a yellow light when there's 2 minutes left. Thank you, Your Honor. Explain to me again. I asked you earlier and you answered whether you discontinued paying the charges at the time the regulation was issued. Have those charges continued to be paid up till now? Or at least up till the time of the district court judgment? There did come a point in time where the IXCs, my client and Sprint ceased paying the access charges while this litigation was pending, taking the view that they were not subject to access charges. That became a disputed issue and that was there were counterclaims that were filed by the Lex to seek to obtain payment of those amounts. The district court granted summary judgment for the Lex on those counterclaims and so those amounts are part of the issue in this case. Does the record reflect when or approximately when those fees were discontinued? I don't remember the exact date. You don't need to give us the exact date. It was after the filing of the complaints in this case which were filed in 2014 and 15 if memory serves. Unless the court has further questions I look forward to resuming the discussion in rebuttal. Thank you Mr. Weissman. Mr. Lobel. Ultimately I don't want to go on with your argument but ultimately I would like to have the questions that I posed addressed. May it please the court, Douglas Lobel on behalf of CenturyLink and court appointed lead counsel for the Lex appellees. Your honors, I'm going to try to answer every one of the questions you posed to my colleague. Let me first address Judge Jolly's question about putting this in simple terms and I think I can do that and let me give that a try. The appellants in this case cannot point to any section of the Telecom Act any FCC rule any FCC order or any judicial opinion that ever said the Lex cannot impose access charges on IXCs when they carry inter-MTA traffic. There is no such statement in any of those materials that I just addressed. What is the trick in your statement? Is your statement saying that it has never been that precise? Are you saying there's nothing from which we can extrapolate the result that they won't? I'm saying the latter, your honor. You cannot extrapolate the result from what's there. Where I was going to go next was to say while they can't point to anything that says that rule of law there are at least five authorities that Judge Fitzwater relied on that I can cite to you now that confirm that IXCs owe these access charges for this kind of traffic. Let me just tick them off just quickly. In 251G the Congress preserved the access charge regime as we just talked about. Until explicitly superseded. They did, your honor, and that's the starting point not the regulations the council talked about the starting point of the analysis is 251G. In the 96 Act in the local competition order paragraph 30 of the local competition order which Will you tell me why the comprehensive reform order does not explicitly supersede 251G? Yes, your honor, I will. It uses those words which is very helpful to show that when the FCC intends to explicitly supersede they know how to do it and they use those words but this is not the superseding of the obligation to pay the access charges. If you read further it talks about the transition process detailed below. What happened in 2011 was the FCC was beginning to transition the rates of access charges not who pays them or when they're paid. That's covered by part 69 of the access charge regulations, 69B5 that we've cited in our brief. Access charges continued but what the FCC explicitly superseded was the rates they wanted a 7 year transition to reduce the rates for terminating access which is practically complete now. It began in 2011 and it's grandfathered for some of the smaller LECs. Terminating access charges have gone away for the larger LECs. Originating access charges were capped at a particular rate so while the language is the same as used in 251G, your honor, what that's referring to is and you see in 764 there are references to the transition mechanism we outlined below and so I'm sorry to interrupt you but tell me expressly in simple words that I can understand without referring to a lot of regulations if you can abort it why 251G has not been explicitly superseded by the comprehensive reform order that says at that point that the regime shall be the negotiated rate Your honor, because what's been superseded are the amount of the access charges not whether they're owed. But where does it say that? Your honor, it says it in 764. It doesn't say that at all I mean it says that the exchange is subject to regulation under the I mean the comprehensive reform order says that exchange of traffic is subject to regulation under the reciprocal compensation framework Your honor, why doesn't that mean what it says? 764 refers to the transition mechanism we outlined below that's in the first and second sentence of 764 and then below that they talk about the transition process detailed below which is limited to terminating switch access traffic as I referenced earlier with the FCC was doing in 2011 was reforming the rates to move towards the Why don't I get that? Yes I don't see how that contradicts the plain language that I'm reading here and you can tell by the express terms of section 251B therefore when an LEC is apported to the transport and termination of access traffic the exchange of traffic is subject to the regulation under the reciprocal compensation framework I mean, what does that in itself mean? Your honor what happened was Are you telling me I cannot understand that unless I go to other regulations? Is that what you're saying? There are many other provisions in this order that relate to the transitional mechanism for the access rates All it was doing was changing the amount of the access rates. It was not changing the obligation to pay them at all It doesn't say it's changing the amount It says the exchange of traffic is subject to regulation under the reciprocal compensation framework. Your honor It talks about the transitional device in 763 and it talks about the transitional mechanism in 764 and we're certainly happy to provide some supplemental briefing to you on this issue which I don't think either party briefed but this order is dealing with the amount of the access charges not whether they're owed It doesn't say that that I can read Now you can tell me where it says that It says 764 itself says in this order we explicitly supersede the traditional access regime. They supersede the access regime Your honor it was supersede And find it appropriate to bring all traffic within 251 B5 regime at this time into the Your honor I don't have handy the whole large mechanism to show you where the rates are transitioned but we're happy to provide some supplemental briefing on that because again part 69 I'm sorry Yes But you keep telling me that what I'm reading does not mean what it says No your honor I think what I'm focusing on are the references to the transitional process that's detailed below. It's in many other provisions of this very long order But there is a transition of rates down to close to zero which is in process which actually ends in 2020 And this was in 2011 So they were slowly gradually moving the access rates down for terminating access They capped the rate for originating access The FCC has never said access charges are not owed Ever said that And where I was going when I first began is that In section 30 of the local competition order it says nothing in the order alters the collection of access charges In the TSR wireless case intra MTA traffic is subject to access rules if carried by an IXC In the Fitch opinion this court affirmed a Texas public utility commission holding that IXCs pay access charges on intra MTA calls So this has been the law ever since the 96 act Now with respect to some of the other questions that were asked Judge Smith The appellants have been completely inconsistent in their representations in this litigation and in their actions You asked about the 2011 order. They would tell you that the change occurred in the 96 order I just read a number of quotes between 96 and 2008 that says these charges still apply They for sure have no argument between 1996 and 2011 and while they'll tell you that they perceived this change in 1996 they continued paying every month every month for 15 years and they continued to pay until these lawsuits were filed which I suggest to you shows that if it was so explicit and so obvious after 2011 as Judge Jolly is suggesting then why would they have continued to pay access charges in 2011, 2012 2013 and 2014 when they filed these lawsuits There is no explanation for that Mr. Weissman says that this is local traffic It's non-access traffic Is that correct? It's not correct at all with respect to Examine that in some detail for us central to his argument Yes, Your Honor Let me refer the court to paragraph 1036 of the local competition order Your Honor I was asked earlier about the trick in the statement Let me flip that onto the appellants The trick here The appellants are engaging They are using a set of rules for the end point carriers the wireless carrier and the local exchange carrier and they are trying to apply it to the carrier in the middle, the IXC These are two streams that do not cross There are a large set of rules that are called the reciprocal compensation rules that relate to those two end point carriers Those are not at issue before the court Let me now take you to 1036 and explain where this misunderstanding about local comes from In 1036 the FCC said We will define the local calling area for calls to or from a wireless network and that's what Mr. Weissman is talking about It's local, meaning it's local for everyone Not true The sentence goes on to say For the purposes of applying reciprocal compensation obligations under section 251b-5 So the designation of local is qualified as just involving this reciprocal compensation scheme which as I mentioned is the two end point carriers They are not an end point carrier They are the carrier in the middle They are not a wireless carrier and they are not a local exchange carrier The FCC designated the traffic as local just for the purpose of those two end point carriers They are trying to take it and import it into the rules relating to the IXCs The rules relating to the IXCs are in the access regulations When the IXCs order service out of our access tariffs they pay access charges and it's governed not by reciprocal compensation but under part 69 of the regulations In fact section 1034 of the act just two sections before what I just read says that reciprocal compensation is not applicable to the IXCs So what you see in the briefing and by the way what you see in the cases is an attempt to import rules that do not apply to this case It's like applying rules regarding... Are you telling me that the comprehensive reform order does not apply to this case? It does apply to this case your honor but again and we will clarify this we will show you that it does not abrogate the access rules it just gradually over a number of years lowers the rates Wait a minute it says we explicitly supersede Yes your honor the initial access charge regime What does that mean? Your honor what it means is that's a reference to 251G the standard that is the only way you can make a change to the status quo and they explicitly superseded it but they just did it for the rates the amount I know that We're going to submit a supplemental brief to the court that will walk you through that I'm not able to do it as I'm standing here until you do that then the questions that I am posing remain unanswered  is that what I'm hearing? Yes your honor although some of the questions you're posing I think have been answered which is that I don't think it's in dispute and Judge Fitzwater certainly found this that there was no explicit superseding of any of these rules Judge Fitzwater found at any time but certainly your question suggests there might have been in 2011 we will address that but there's no suggestion there was between 96 and 2011 I don't know about that either I mean the carve out in other words the regime is going to be the reciprocal method of compensation I mean initially is that then 251G is a carve out that's the way I understand it carve out for that particular to provide exchange rate access until overruled what is exchange access then exchange access is seems to me to refer basically to long distance calls between the previous effectively it is your honor and so what yes and so what 251G said is that you will continue to obtain and pay the compensation that you've been paying prior to the implementation of the act this argument that they don't use exchange access is sort of this magical transformation that they suggest from section 1036 which I just read to you, that's a misunderstanding because they're importing the reciprocal compensation rules into the access charge regime, they're trying to cross the streams that don't cross, these are different carriers that provide different services and in fact in the 2001 order which I highly recommend to the court it's a very critical order paragraphs 30-39 the FCC cautioned against the very thing that the appellants are doing here the FCC said you cannot use the reciprocal compensation regs to override pre-existing access obligations and that's in paragraph 36 of the 2001 order the 2001 order I would suggest to the court is perhaps the most important authority before the court on this issue on what issue? on the issue of whether the access charges are owed because there was a lot of confusion after the 96 order 51g, is that what you're saying? the 2001 the FCC's 2001 order was an order that was issued to between 251b-5 and 251g and what the FCC recognized in the 2001 order is that parties may do what the appellants are doing here they may try to take those end point carrier rules the ones that I say do not apply because IXCs do not exchange reciprocal compensation try to take those to undermine the pre-existing access regulations and the FCC in paragraph 36 of the 2001 order said you cannot do that and that we are maintaining the pre-existing access regime and effectively confirming that the reciprocal compensation regulations are not applicable that's why when council started with that, they are looking to get away from 251g 251g is the operative provision here and in fact in the century tale of Chatham case and 251g says that it is referring to a continuing provide exchange access, the question is what exchange access means I think you actually summarized it correctly it's effectively the access to the local network to provide long distance service for the customers of the IXC and they pay a fee for that they also charge their customers a toll service when they make those long distance calls so the exchange access is the service being provided in the tariff it's a tariff service, there are tariff rates if the toll service referring to the toll service in the regulation refers to long distance service then 251g is not a carve out from 251b5 for the local intra MTA calls issued in this case your honor, it is a carve out in the sense that 251b5 talks about this reciprocal compensation this end point carrier wireless local and the FCC said the compensation between those parties is reciprocal compensation 251g carves out certain services from that and says those services are not compensated by reciprocal compensation, they're compensated by the access charges you've been paying all along up to the date of that, that was what judge Fitzwater found, he called it the baseline practice he looked at what the IXCs were doing the day before the statute was enacted and he said well you're receiving access and therefore you have to pay access charges, and that continued until explicitly superseded well that depends on what you mean by exchange access well your honor, I think you summarized it accurately just in general it means long distance it's effectively access to an exchange that allows the IXCs to connect a call from a homeowner who wants to call we use the Midland to Monroe example on page 38 of our bill and if that's true, why is 251g a carve out from the general regime that the 1996 act imposes of reciprocal compensation? It's a carve out because it takes certain of the services that are enumerated in 251g and it pulls them out of the reciprocal compensation scheme and says they're compensated the way they've always been compensated if you look at the title of 251g your honor the title is continued enforcement of exchange access and interconnection requirements you're really talking here about really we're talking about wireless what the wireless phones have introduced into what really didn't exist in 1996 well it's a designation for wireless calls but these access charges and these access calls have existed for decades and that's what we're talking about what exchange access means you seem to be conceding that it means traditional long distance calls that were charged in addition to the contract that the consumer had with the LEC so that now that would mean to me at least that there's some doubt about whether 251g is a carve out for the issue we're talking about today well your honor I think I would refer the court to the century tell of Chatham case that this court decided in 2017 it lays out the framework for the analysis and it does describe 251g as a carve out judge Fitchwater similarly described 251g as a carve out these are traditional what you think of as traditional long distance calls they are compensated by the long distance carriers to the local carriers with access charges that's what this whole case is about they are coming in now late in the game after paying these charges for 18 years with no dispute and saying the FCC issued an order in 1996 that made these charges illegal now I would ask you if there are they rely heavily on cases from the other circuits and as does Mr. Weissman yes your honor you need to reserve enough time to address those specifically your honor I can address that very easily just as judge Fitchwater found those cases do not address the issue before the court this is what those cases address they address the issue of when you have a wireless carrier on one end of the call and a local carrier on the other end of the call what is the nature of the compensation if there is a carrier in the middle not what does the carrier in the middle earn what is there a change in the payment by the wireless or the local if the carrier is in the middle that's the issue every one of those cases Alma, Atlas, Western Radio INS that's the issue there's only been one or two cases that has ever addressed the issue before this court today what is the compensation that the IXC must pay to get that exchange access that is the Fitch case this court decided in 2008 affirming a Texas PUC decision that said when an IXC is carrying a call in an intra MTA call they owe access charges and the other opinion that I would refer you to the court to is the TSR wireless opinion which was an FCC ruling that's found similarly where there was a 200 mile call the IXC was carrying it and the FCC said in that opinion when the IXC carries that call they owe access charges no other cases have ever addressed the issue before the court and what again as I mentioned earlier what the appellants are trying to do is import rules and cases that address different issues into this case Judge Bennett by the way in Iowa who also looked at all of those cases he found the exact same thing his conclusion was these cases have nothing to do with the issue before the court so there's three different courts that have concluded that this court, in the Fitch case Judge Bennett and Judge Fitzwater and I suggest that when this court reads those cases carefully you will reach the same conclusion I wanted to address an issue that Judge Stewart raised regarding 251G and the sequencing and the briefing there was the initial motion to dismiss that Sprint and Verizon were involved in in 2015 which we briefed, I argued Judge Fitzwater issued an opinion in 2015 the 251G that was about a four hour argument it was a major part of that morning in 2017 level 3 which is a different carrier also an appellant in this case brought a motion to dismiss against CenturyLink and that was argued in 2017 for another few hours in front of Judge Fitzwater and almost the entire discussion was about 251G so to suggest that there was an opportunity to brief this is simply not true Judge Fitzwater spent many many courtroom hours discussing these issues between the appellants and the appellee and virtually the same arguments are being made today that were made in front of Judge Fitzwater and you certainly can read the transcripts which are part of the record to confirm that Are there other questions that the court has that I have not addressed that were raised to the appellant Alright, thank you Mr. Thank you Thank you I'd like to begin with a correction I'm informed that whereas Verizon ceased paying access charges after this lawsuit was filed Sprint actually began that practice shortly before the lawsuit was filed I might also point out that the same phenomenon is true on the other side of this case in the sense that one of the appellants as was mentioned is Level 3 which is an affiliate of CenturyLink which is one of the appellees in this case so basically the entire industry is looking for guidance from this court as to what the intra-MTA rule means and how it applies in a situation like this Let me start with We will provide that Let me go back to the syllogism that Judge Chollet I think engaged with opposing counsel on access charges apply to long distance intra-MTA calls are local calls they're not long distance calls and basically the past practice of imposing access charges on calls that were long distance before the MTA rule is no longer applicable because once the FCC defined the local calling area as the MTA that means those calls are local and not subject to access. It's as simple as that and that's also true Well if it is that plain and easy it's really surprising that the fees continue to be paid for as long as they were. I take the point your honor and I would say that it did take a while for the courts to make clear that that rule I just announced or described I should say is applicable when there are inter-exchange carriers involved in the call path so once that became clear through the decisions of the 8th and 10th circuits and the FCC's endorsement of those decisions in the Connect America order and as Judge Jolley has pointed out it's explicit supersession of access charges. That's when the industry studied the issue came to the conclusion at least on our side of the table that that is a correct statement of the law and brought this lawsuit to vindicate that position Mr. LaBelle indicates that those decisions from the other circuits dealt only with the reciprocal charges where there is the carrier in the middle but not the IXC fees themselves We would respectfully disagree your honor and would invite the courts attention specifically to the INS case from the 8th circuit where the dispute was between the local exchange carrier and the long distance carrier Quest was the long distance carrier It passed the traffic through long distance trunks and the court ruled that the LEC could not impose access charges on Quest because it was acting as an intermediary carrier to facilitate the delivery of local traffic Counsel opposite cites the Fitch case from our court in 2008. What's your take on this? It's a non, sorry pardon me your honor, it's a non-presidential opinion and I would say the court did have a passing remark on this subject where the court seemed to if I may say so assume that the traffic involved was long distance traffic that was not examined and the court did not have the benefit of the FCC's ruling in the Connect America order which occurred subsequently You say it's non-presidential but you're arguing out of circuit cases which aren't presidential to us either. Fair point your honor but I think that those out of circuit cases while not binding on this court nevertheless are published and therefore presidential and as a matter of prudence I think the court ought to give great weight to avoid creating a difference of opinion among the circuits Now the INS case on which you rely was different because in that case Quest wasn't acting as an IXC because it was connecting calls within the same exchange area about six blocks apart as I recall the facts So your honor first of all that's not disclosed in the court's opinion and if that was the fulcrum of the analysis then the court would have had to announce that as a basis. All that the court said is Quest as a long distance carrier is delivering it through long distance trunks. It doesn't matter because the traffic is local as defined by the MTA not as defined by the distance that the carrier is transporting the call. They would also invite the court's attention to the Rita case also from the 8th circuit where again the question was can the LEC charge the long distance provider Quest access charges and the court said no it could not because the calls were intra MTA that was the reason the calls are local because they are intra MTA and that reason is equally applicable in this case Your time has expired Mr. Weissman so there's been in your case under submission there's been discussion of supplemental briefing so here's what we will allow each side can present a supplemental letter brief of no more than five pages by two weeks from today and then each side may provide a simultaneous response of no more than three pages ten days after that and these are not supposed to be repeating what's already in the brief but responding to specific questions or other points related to the questions that were asked with that the case is under submission and the court will take a brief recess before hearing the rest of the docket